**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| Rian Butler, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO. |
| v. | CLASS ACTION COMPLAINT |
| Texas Card House, LLC, and Austin Card Room, LLC d/b/a Texas Card House, | <u>JURY TRIAL DEMANDED</u> |
| Defendants. | |

**Nature of this Action**

1.      Rian Butler ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against Texas Card House, LLC and Austin Card Room, LLC d/b/a Texas Card House (collectively, "Defendants") under the Telephone Consumer Protection Act ("TCPA").

2.      Upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(c)(2) by delivering more than one advertisement or marketing call or text message to residential or cellular telephone numbers registered with the National Do-Not-Call Registry ("DNC Registry") without the prior express invitation or permission required by the TCPA.

3.      Additionally, upon information and good faith belief, Defendants routinely violate 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200(d) by delivering more than one advertisement or telemarketing call or text message to residential or cellular telephone numbers while failing to maintain a list of persons who request not to receive such calls made by or on behalf of that person (an "Internal DNC List") or honor Plaintiff's do-not-call requests.

**Parties**

4.      Plaintiff is a natural person who resides in Austin, Texas.

5.      Texas Card House, LLC is a Texas limited liability company that runs a members-only poker club business, with its principal place of business in Austin, Texas.

6.      Austin Card Room, LLC d/b/a Texas Card House is a Texas limited liability company that runs a members-only poker club business, with its principal place of business in Austin, Texas.

7.      Texas Card House, LLC and Austin Card Room, LLC d/b/a Texas Card House share ownership and management—including Chief Executive Officer Ryan Crow—and jointly operate the "Texas Card House" business and locations.

8.      Alternatively, Austin Card Room, LLC d/b/a Texas Card House is a subsidiary of Texas Card House, LLC.

**Jurisdiction and Venue**

9.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(c)(5), and 28 U.S.C. § 1331.

10.     Venue is proper before this Court under to 28 U.S.C. §§ 1391 (b)(1) and (b)(2) as Defendants are each headquartered in this District, Defendants engaged in the complained-of conduct from this District, and Plaintiff received the complained-of text messages in this District.

**Factual Allegations**

11.     Plaintiff is, and has been at all times relevant to this action, the regular and sole user of his cellular telephone number—(281) 467-XXXX.

12.     Plaintiff uses his cellular telephone as his personal residential telephone number.

13.    In 2003, the Federal Communications Commission ("FCC") ruled that cellular telephone numbers that are placed on the DNC registry are presumed to be residential. *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14039 (2003).

14.    Plaintiff registered his cellular telephone number with the DNC Registry on December 8, 2005, and has maintained that registration through the present date.

15.    Starting in the summer of 2018 and continuing through the present, Plaintiff received many dozens of text messages from multiple telephone numbers, including (737) 265-3103 and (954) 645-7508, seeking to solicit Plaintiff to sign up for a paid-membership to use Defendants' services to play poker, both generally and with respect to specific tournaments. *See, e.g.*:





16.     Each of the text messages were for the purposes of telemarketing and soliciting Plaintiff to use Defendants' business: specifically, to solicit Plaintiff to sign up for a membership to join Defendants' poker club where persons can generally play poker or participate in poker tournaments at Defendants' location(s).

17.     Furthermore, Defendants' messages offer the ability to facilitate travel and lodging arrangements to participate in these poker tournaments, thus Defendants' messages also include an offer to provide travel and lodging arrangement services.

18.     The purpose of the text messages at issue was, therefore, to advertise and to market Defendants' business or services.

19.     Plaintiff did not request offerings from Defendants, was not interested in joining a poker club or tournament, and did not otherwise communicate with Defendants prior to receiving these telemarketing communications.

20.     Rather, upon information and good faith belief, Plaintiff suspects that Defendants began delivering the subject text messages to his cellular telephone number because he once visited a poker room in the Summer of 2018.

21.     However, Plaintiff has not visited any poker rooms since 2018, used Defendants' websites to play poker, and has not otherwise communicated with or transacted with Defendants.

22.     As a result, Plaintiff did not provide Defendants with his prior express written consent to receive these telemarketing communications, and does not have any ongoing business relationship with Defendants.

23.     Accordingly, Plaintiff did not give Defendants prior express invitation or permission to send advertisement or marketing text messages to his cellular telephone number.

24.     In light of these continued unwanted messages, Plaintiff sent Defendants numerous "stop" instructions over the years, including in April 2019 and November 2020 by way of a "stop" text message to (737) 265-3103, as well as on November 21, 2024, by way of a "stop" instruction to Defendants at telephone number (954) 645-7508:

[images on next page]







25.    However, Defendants proceeded to ignore these various "stop" instructions and continued to send text messages to Plaintiff regarding Defendants' offerings and services, including, most recently, on December 11, 13, and 14, 2024:



26.    To the extent that Defendants *originally thought* they had Plaintiff's permission to send telemarketing communications to his residential telephone number, when Plaintiff instructed Defendants to "stop" delivering telemarketing communications to him, he withdrew any consent that Defendants thought they had to deliver the subject telemarketing text messages, and he did so *repeatedly*.

27.    Moreover, given that the subject text messages literally instruct recipients to respond "stop" to "end" or "unsubscribe" from the communications, Plaintiff's "stop" instruction was inherently an instruction to place his telephone number on Defendants' Internal DNC List.

28.     Defendants' text message links redirect to Defendants' website, https://www.texascardhouse.com/, which is owned and operated by Defendants.

29.     Defendants' website broadly claims that it provides "[s]eamless poker experiences tailored to you," either in person or online through Defendants' "Hijack Poker" app.[1]

30.     Defendants operate multiple locations in the State of Texas, including a location in Austin, Texas commonly described as "TCH Social Austin."[2]

31.     Defendants offer various membership packages, which range from $10.00 to $300.00 recurring payments made by customers to Defendants.[3]

32.     Membership benefits with Defendants include access to exclusive tournaments, cash games, special events, and a "secure and comfortable environment."[4]

33.     Thus, in exchange for a customer giving money to Defendants, Defendants offer that customer access to poker games in-person or online, which are facilitated through Defendants employing card dealers, other servers, and providing food and alcohol.[5]

---

[1]     https://www.texascardhouse.com/ (last visited December 16, 2024).

[2]     https://www.texascardhouse.com/austin (last visited December 16, 2024); *see also* https://www.texascardhouse.com/ (last visited December 16, 2024) ("Discover our 6 premier locations across Texas. Each venue offers a unique poker experience, bringing the best of competitive and recreational play to every corner of the Lone Star State.").

[3]     *Id*.

[4]     *Id*.

[5]     https://www.texascardhouse.com/austin (last visited December 16, 2024) ("Indulge in a culinary experience like no other at our in-house restaurant and bar, where you can enjoy a carefully curated selection of mouthwatering casual bites and expertly crafted signature cocktails. Join us for a delightful dining experience that combines exceptional flavors with a cozy atmosphere."); *see also* Texas Card House, LLC's Amended Traditional Motion for Summary Judgment, ECF No. 18-1 at 1, *Benjamin Meine v. TCHDallas2 LLC et al.*, Case No. 3:23-cv-00968-K (N.D. Tex) ("TCH—a Texas company with four legally-operating locations across Texas— offers a private club for dues paying members to gather to play poker. Unlike casinos or the countless "underground" gambling operations in Texas, TCH takes no 'rake' from its member's winnings or from any hand or pot. Instead, TCH generates its revenue through membership fees, access fees, and sales of food, beverages, and merchandise.").

34.     Upon information and good faith belief, the text messages at issue were sent by Defendants voluntarily.

35.     The text messages at issue were sent for non-emergency purposes.

36.     Plaintiff suffered actual harm as a result of the text messages at issue in that he suffered an invasion of privacy, an intrusion into his life, and a private nuisance.

37.     Upon information and good faith belief, Defendants knew, or should have known, that Plaintiff registered his cellular telephone number with the DNC Registry.

38.     Upon information and good faith belief, because Defendants failed to heed Plaintiff's "stop" instruction and sent numerous to Plaintiff's cellular telephone number for years after he repeatedly (and recently) instructed Defendants to "stop", Defendants either (1) failed to implement or maintain an Internal DNC List whatsoever; (2) failed to maintain an adequate written policy for honoring revocation or Internal DNC List requests; (3) failed to adequately train its employees or personnel regarding its Internal DNC List; or (4) failed to adequately record revocation or Internal DNC List requests. .

39.     Had Defendants maintained or adhered to an Internal DNC List or external do-not-call list, Defendants would not have text messaged Plaintiff after his "stop" instruction.

### Class Action Allegations

40.     Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes (the "Classes"):

**Federal Do-Not-Call Registry Class:**

> All persons throughout the United States (1) to whom Texas Card House, LLC or Austin Card Room, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Texas Card House, LLC's or Austin Card Room, LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Texas Card House,

LLC or Austin Card Room, LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) within four years preceding the date of this complaint through the date of class certification.

**Internal Do-Not-Call List Class:**

> All persons throughout the United States (1) to whom Texas Card House, LLC or Austin Card Room, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Texas Card House, LLC's or Austin Card Room, LLC's, or their business partners', goods or services, (2) where the person's residential or cellular telephone number had been registered with the National Do Not Call Registry for at least thirty days before Texas Card House, LLC or Austin Card Room, LLC delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) who previously instructed Texas Card House, LLC or Austin Card Room, LLC not to call them or deliver text messages to them, (4) within four years preceding the date of this complaint through the date of class certification.

41.     Excluded from the Classes are Defendants, their officers, directors, managers, and members, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

42.     Upon information and belief, the members of the Classes are so numerous that joinder of all of them is impracticable.

43.     The exact number of members of the Classes are unknown to Plaintiff at this time and can be determined only through appropriate discovery.

44.     The members of the Classes are ascertainable because the Classes are defined by reference to objective criteria.

45.     In addition, the members of the Classes are identifiable in that, upon information and belief, their cellular telephone numbers, names, and addresses can be identified in business records maintained by Defendants, and by third parties.

46.     Plaintiff's claims are typical of the claims of the members of the Classes.

47.     As it did for all members of the Federal Do-Not-Call Registry Class, Defendants

delivered solicitation text messages to Plaintiff's telephone number more than thirty days after Plaintiff registered his cellular telephone number with the DNC Registry.

48.    As it did for all members of the Internal Do-Not-Call List Class, Defendants delivered solicitation text messages to Plaintiff's telephone number without previously consulting or cross-referencing its own internal do-not-call list(s), or, in the alternative, Defendants did not maintain such a list.

49.    Plaintiff's claims, and the claims of the members of the Classes, originate from the same conduct, practice, and procedure on the part of Defendants.

50.    Plaintiff's claims are based on the same theories as are the claims of the members of the Classes.

51.    Plaintiff suffered the same injuries as the members of the Classes.

52.    Plaintiff will fairly and adequately protect the interests of the members of the Classes.

53.    Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the Classes.

54.    Plaintiff will vigorously pursue the claims of the members of the Classes.

55.    Plaintiff has retained counsel experienced and competent in class action litigation.

56.    Plaintiff's counsel will vigorously pursue this matter.

57.    Plaintiff's counsel will assert, protect, and otherwise represent the members of the class.

58.    The questions of law and fact common to the members of the Classes predominate over questions that may affect individual members of the Classes.

59.    Issues of law and fact common to all members of the Classes are:

a. Defendants' conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages;

b. For the Federal Do-Not-Call Registry Class, Defendants' practice of delivering text messages, for solicitation purposes, to telephone numbers already registered on the DNC Registry for more than thirty days;

c. For the Internal Do-Not-Call List Class, Defendants' practice of delivering text messages, for solicitation purposes, without consulting or cross-referencing against any internal do-not-call lists, including whether Defendants maintained any such lists;

d. Defendants' violations of the TCPA; and

e. The availability of statutory penalties.

60. A class action is superior to all other available methods for the fair and efficient adjudication of this matter.

61. If brought and prosecuted individually, the claims of the members of the Classes would require proof of the same material and substantive facts.

62. The pursuit of separate actions by individual members of the Classes would, as a practical matter, be dispositive of the interests of other members of the Classes, and could substantially impair or impede their ability to protect their interests.

63. The pursuit of separate actions by individual members of the Classes could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendants.

64.    These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the Classes.

65.    The damages suffered by the individual member of the Classes may be relatively small, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the Classes to redress the wrongs done to them.

66.    The pursuit of Plaintiff's claims, and the claims of the members of the Classes, in one forum will achieve efficiency and promote judicial economy.

67.    There will be no extraordinary difficulty in the management of this action as a class action.

68.    Defendants acted or refused to act on grounds generally applicable to the members of the Classes, making final declaratory or injunctive relief appropriate.

**Count I**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Federal Do-Not-Call Registry Class**

69.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-68.

70.    A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

71.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber

who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

72.    Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

73.    Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

74.    Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the members of the Federal Do-Not-Call Registry Class who registered their respective cellular or residential telephone numbers with the DNC Registry, which is a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

75.    Defendants violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Federal Do-Not-Call Registry Class, more than one solicitation call or text message in a 12-month period in violation of 47 C.F.R. § 64.1200.

76.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. § 64.1200, Plaintiff, and the members of the Federal Do-Not-Call Registry Class, are entitled to damages in an amount to be proven at trial.

**Count II**
**Violation of 47 U.S.C. § 227(c)(5)**
**On behalf of the Internal Do-Not-Call Class**

77.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-68.

78.     A text message is a "call" as defined by the TCPA. *See, e.g.*, *Duran v. La Boom Disco, Inc.*, 955 F.3d 279, 280 n.4 (2d Cir. 2020) ("It is undisputed that '[a] text message to a cellular telephone . . . qualifies as a 'call' within the compass of [the TCPA].'") (internal citation omitted); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

79.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(d), states that no person or entity shall initiate "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

80.     Among other standards, the instituted procedures require that Defendant: (1) "must have a written policy, available upon demand, for maintaining a do-not-call list"; (2) must record a "do not call" request and "and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made"; and (3) "must maintain a record of a consumer's request not to receive further calls." *See* 47 C.F.R. §§ 64.1200(d)(1), (d)(3), and (d)(6).

81.     Section 64.1200(e) provides that §§ 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

82.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of those regulations, which were

promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

83.    Upon information and belief, Defendants' decisions to repeatedly ignore Plaintiff's "stop" instructions confirm Defendants' failure to comply with 47 C.F.R. § 64.1200(d), including Defendants' failure to: (1) maintain a list of persons who request not to receive such calls made by or on behalf of Defendants; (2) have a written policy, available upon demand, for maintaining a do-not-call list; (3) record a "do not call" request and place the associated telephone number on Defendants' Internal DNC List at the time the request is made; and (4) maintain a record of a consumer's request not to receive further calls.

84.    As a result, Defendants violated 47 C.F.R. §§ 64.1200(d), (d)(1), (d)(3), and (d)(6) by failing to: (1) maintain a list of persons who request not to receive such calls made by or on behalf of Defendants; (2) have a written policy, available upon demand, for maintaining a do-not-call list; (3) record a "do not call" request and place the associated telephone number on Defendants' internal do-no-call list at the time the request is made; or (4) maintain a record of a consumer's request not to receive further calls.

85.    Defendants therefore also violated 47 U.S.C. § 227(c)(5) because they delivered, or caused to be delivered, to Plaintiff and members of the Internal Do-Not-Call Class, more than one solicitation text message in a 12-month period that violated 47 C.F.R. § 64.1200(d).

86.    As a result of Defendants' violations of 47 U.S.C. § 227(c)(5) and 47 C.F.R. §§ 64.1200(d), (d)(1), (d)(3), and (d)(6), Plaintiff, and the members of the Internal Do-Not-Call Class, are entitled to damages in an amount to be proven at trial.

### Prayer for Relief

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.     Determining that this action is a proper class action;

b.     Designating Plaintiff as a class representative of the class under Federal Rule of Civil Procedure 23;

c.     Designating Plaintiff's counsel as class counsel under Federal Rule of Civil Procedure 23;

d.     Adjudging and declaring that Defendants violated 47 U.S.C. § 227(c)(5);

e.     Enjoining Defendants from continuing their violative behavior, including continuing to deliver solicitation text messages to telephone numbers registered with the DNC Registry for at least thirty days;

f.     Awarding Plaintiff and the members of the class damages under 47 U.S.C. § 227(c)(5)(B);

g.     Awarding Plaintiff and the members of the Classes treble damages under 47 U.S.C. § 227(c)(5)(C);

h.     Awarding Plaintiff and the Classes reasonable attorneys' fees, costs, and expenses under Rule 23 of the Federal Rules of Civil Procedure;

i.     Awarding Plaintiff and the members of the Classes any pre-judgment and post-judgment interest as may be allowed under the law; and

j.     Awarding such other and further relief as the Court may deem just and proper.

**Demand for Jury Trial**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date: December 17, 2024.

/s/ Alex D. Kruzyk
Alex D. Kruzyk
Texas Bar No. 24117430
Bryan A. Giribaldo
Texas Bar No. 24124547
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff and the proposed classes*